IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MONJASA A/S,                                    3:12-cv-01489-BR

          Plaintiff,

                                                OPINION AND ORDER

v.

M/V PERISTIL, her tackle,
engines, etc. *in rem*,

          Defendant.


**M. CHRISTINE HELMER**
**ELIZABETH TEDESCO MILESNICK**
Miller Nash LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
(503) 224-5858

**RICHARD V. SINGLETON II**
**JEREMY A. HERSCHAFT**
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5166

          Attorneys for Plaintiff

JOHN C. MERCER
TODD A. ZILBERT
ROBERT I. SANDERS
Wood Tatum
6915 S.W. Macadam Avenue, Suite 115
Portland, OR 97219
(503) 224-5430

        Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on the Motion (#33) of Defendant M/V PERISTIL to Vacate Arrest and for Summary Judgment. Defendant seeks an order under Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure vacating the arrest of Defendant on the ground that Plaintiff Monjasa A/S did not have a maritime lien when it filed this action, which is a necessary prerequisite for an *in rem* action and vessel arrest. In the alternative, Defendant moves for summary judgment under Federal Rule of Civil Procedure 56 on the grounds that Plaintiff has failed to state a claim upon which relief can be granted because this Court lacks *in rem* jurisdiction.

Plaintiff requests by letter (#48) dated May 10, 2013, that the Court strike Defendant's Sur-Reply Memorandum Regarding Indian Authority or allow additional briefing as to the issue of how an Indian court would decide the Motion (#33) pending before this Court.  The Court construes Plaintiff's letter request (#48) as a Motion to Strike Defendant's Sur-Reply or, in the Alternative, to Allow Additional Briefing.

2 - OPINION AND ORDER

For the reasons that follow, the Court **DENIES** Defendant's
Motion (#33) to Vacate and for Summary Judgment and **DENIES**
Plaintiffs' Motion (#48) to Strike Defendant's Sur-Reply or, in
the Alternative, to Allow Additional Briefing.


<u>**BACKGROUND**</u>

**I.    Pertinent Factual Background.**

The following facts are undisputed unless otherwise noted:

Plaintiff is a limited partnership under the laws of
Denmark.  Plaintiff supplies fuel oil to ocean-going and other
ships.  Defendant is an ocean-going, Croatian flag vessel owned
by Peristil Maritime, Inc., and managed by Jardroplov
International Maritime Ltd.

From April 1, 2010, until at least July 7, 2012, Defendant
was time-chartered from Peristil Maritime to charterer Carbofer
Maritime Trading ApS, a Danish business organization with a place
of business in Copenhagen.

In January 2012 Plaintiff sold and delivered 245.69 metric
tons of bunker fuel to Defendant through Carbofer at a price of
$192,866.65 with interest on the unpaid balance accruing at 2%
per month.

Plaintiff's "Bunker Confirmation" provides:  "Monjasa Group
Terms & Conditions Jan 2012 to apply.  Copy available on our
website:  *www.monjasa.com.*"

3 - OPINION AND ORDER

The bunker fuel was consumed by Defendant.

Plaintiff issued Invoice 40395 dated January 24, 2012, in the amount of $192,866.65 addressed to "M/V PERISTIL and/or master and/or Owners and/or charterers and/or managers and/or operators and/or Carbofer Maritime Trading ApS."  Plaintiff sent Invoice 40395 only to Carbofer in Denmark.  Payment of the Invoice was due February 13, 2012.

Carbofer did not timely pay the Invoice and has not responded to demands by Plaintiff to pay the Invoice.

## II.  Procedural Background.

### A.  The India proceedings.

On approximately April 13, 2012, Plaintiff filed a proceeding in the High Court of Gujarat at Ahmedabad in Admiralty seeking the arrest of Defendant, which was at the port of Magdalla in the State of Gujarat, India, at the time.

The initiating pleading in that proceeding is called the "Plaint."  Decl. of Jeremy A. Herschaft in Support of Mem. in Opp'n to Def.'s Mot. to Vacate Arrest and for Summ. J., Ex. A. The Plaint named "Monjasa A/S" as plaintiff and "M.V. 'Peristil' and her Owners/Managers/Charterers and all other Persons concerned and/or interested in her" as defendants and sought to recover sums due to Plaintiff under Invoice 40395 for the delivery of fuel to Defendant in Hong Kong.  *Id.*

In the Plaint Plaintiff made a number of statements,

4 - OPINION AND ORDER

including:

> By this suit, the Plaintiff is seeking the
> arrest, sequestration, condemnation and sale
> of the Defendant Vessel for securing and/or
> satisfying the Plaintiff's claim in
> arbitration in the principal sum of USD
> 1,92,866.65 accrued interest USD 6,557,47
> (till 06th April 2012). . . . [Plaint at
> ¶ 3.]

> The Defendant Vessel has used and/or consumed
> and/or benefited [*sic*] from the said bunkers
> and/or has availed of the same for
> prosecuting her voyages.  The Plaintiff has,
> however, not been paid in respect of the said
> bunkers supplied.  The Plaintiff has
> therefore been constrained to file the
> present Suit seeking security of its claim in
> arbitration, to be invoked as under
> applicable terms and conditions. [Plaint at
> ¶ 3.]

> The supply was effected at the request of the
> Master/charterers/owner and the vessel is,
> therefore liable *in rem*, to make payment to
> the Plaintiff. [Plaint at ¶ 11.]

> The Plaintiff is therefore filing this Suit
> seeking security for the impending
> arbitration, which the Plaintiff shall invoke
> soon. [Plaint at ¶ 12.]

> The Plaintiff's claim arises by reason of
> Bunkers supplied by the Plaintiff to the
> Defendant Vessel.  The Plaintiff submits that
> the Bunkers are essential for the operation
> of the vessel.  The supply of Bunkers was a
> supply of goods or materials supplied to a
> ship for her operation or maintenance and
> also constitute "necessaries."  The same
> therefore give rise to and/or constitute a
> maritime claim and/or maritime lien against
> the Defendant Vessel-Vessel [*sic*] for the
> Bunkers supplied. [Plaint at ¶ 15.]

> The Plaintiff's claim is a recognized
> maritime claim. . . . .  Such a claim has

5 - OPINION AND ORDER

also been recognized as constituting a valid
maritime claim, by the Supreme Court of India
in the case of m.v. Elizabeth.  The Plaintiff
is entitled to proceed *in rem* and this
Hon'ble Court has jurisdiction to entertain
and try and dispose of the Suit under the
provisions of the Admiralty Courts Act, 1861
and the provisions and principles of
admiralty law as applicable and having force
in India.  In addition, the supplies to the
time chartered vessel, made as aforesaid,
were effected as per a contract containing
General Terms and Conditions of the Plaintiff
Group which incorporate the Maritime law of
the United States.  Under the said law such
supplies would give rise to a maritime lien.
The Plaintiff thus has a maritime claim
and/or maritime lien against the Defendant
Vessel.  The Plaintiff is entitled to obtain
security for the said claim in arbitration by
the arrest, sequestration, detention and
condemnation of the Defendant Vessel.
[Plaint at ¶ 18.]

Upon the *ex parte* application of Plaintiff, the High Court

of Gujarat issued an Oral Order on April 16, 2012, approving the

arrest of Defendant, and Defendant was subsequently arrested at

Magdalla, India.  Herschaft Decl., Ex. B.

The April 16, 2012, Oral Order provides in part:

Ms. Padrami Sheth, learned counsel for
plaintiff, submitted that the claim is with
respect to supply of the bunkers i.e. the
necessaries which is supplied on the faith
and credit of the defendant vessel.  Ms.
Sheth further submitted that the plaintiff is
commencing the Arbitration proceedings and
the present suit is filed as well as to
secure the claim in Arbitration.  In support
of the above submission, Ms. Sheth has relied
upon the decision of Bombay High Court
reported in Islamic Republic of Iran v/s.
M.V. Mehrab & Ors.  And in the case of J.S.
Ocean Linner [*sic*] LLC V/s Golden Progress

> and also of this Court in Admiralty Suit No.
> 10 of CROFT SALES AND DISTRIBUTION LTD V/s.
> M.V. Basil & others confirmed by the Division
> Bench of this Court. [Oral Order at ¶ 2.]
>
> Having heard Ms. Sheth, learned counsel for
> the plaintiff, on going through the record
> and considering the prima facie case
> established by the plaintiff and upon the
> plaintiff giving an undertaking in writing to
> the Registar of this Court to pay such sums
> by way of damages as this Court may award as
> compensation in the event of the defendant
> and/or any party sustaining prejudice by this
> order, I do order that the Registrar of this
> Court do issue a warrant for the arrest of
> the defendant vessel M.V. PERISTIL along with
> her hull, engines, gears, [etc.], and all
> appurtenances, at present lying at the Port
> at Magdalla. . . . [Oral Order at ¶ 3.]

On April 19, 2012, the High Court of Gujarat issued an Oral Order permitting Defendant's owner to deposit security in the amount of $251,884.19 in the court's registry and releasing Defendant from the April 16, 2012, arrest order. Peristil Maritime provided substitute security by depositing $251,884.19 into the High Court's registry and obtained Defendant's release from arrest.

These proceedings in the High Court of Gujarat will hereinafter be referred to collectively as "the India proceedings."

**B.  The present action.**

On August 16, 2012, Plaintiff commenced the present action by filing a Verified Complaint (#1) against Defendant pursuant to the Federal Rules of Civil Procedure, Supplemental Admiralty Rule

7 - OPINION AND ORDER

C.  In its Complaint, Plaintiff set out the facts relating to the proceedings in Gujarat, India, representing that it would dismiss its lawsuit in India and return the security to Peristil Maritime if this Court ordered the arrest of Defendant.  Compl. at ¶ 18.

On August 16, 2012, the Court issued an Order Authorizing Issuance of Warrant for Arrest of Vessel (#9-1) and a Warrant for Arrest of Vessel (#12), pursuant to which Defendant was arrested at Kalama, Washington.

On August 16, 2012, Plaintiff also filed a "Purshis" with the High Court of Gujarat to withdraw the India proceedings and agreed to release the security that had been provided as part of those proceedings.  The parties do not dispute such security was returned to Peristil Maritime.

On August 17, 2012, Peristil Maritime provided $251,884.19 as substitute security for Defendant, and Defendant was released from arrest in Kalama.

This Court heard oral argument on Defendant's Motion to Vacate Arrest and for Summary Judgment on April 4, 2013.  At oral argument the Court requested the parties to provide supplemental briefing on whether the cases cited in the High Court's April 16, 2012, Oral Order identified clearly the basis upon which the vessel was seized in the India proceedings.  The Court also requested the parties to submit a stipulation as to whether the Court has jurisdiction to arrest a vessel located in Kalama,

8 – OPINION AND ORDER

Washington.  On May 10, 2010, the parties filed a Stipulation
About the Court's Jurisdiction Over the Columbia River (#47) in
which the parties stipulate:

> [T]hat the District of Oregon has
> jurisdiction to arrest a vessel (assuming all
> other prerequisites for an arrest are
> established) afloat on the Washington side of
> the Columbia River at Kalama, Washington,
> pursuant to the Oregon Admission Act, 11
> Stat. 383 (1859), Local Admiralty Rule LR
> 1056-1, and *The Annie M. Smull*, 1 Fed Cas.
> 983 (D. Or. 1872)(under the act admitting
> Oregon into the Union, Admission Act, Oregon
> district court has jurisdiction to arrest
> vessel moored at Kalama); *see also Nielsen v.*
> *State of Oregon*, 212 U.S. 315 (1909), limited
> by *Heath v. Alabama*, 474 U.S. 82, 91 (1985);
> *W.J. Jones & Sons v. Stocker*, 271 F. Supp.
> 437, 438 (D. Or. 1967)(citing *The Annie M.*
> *Smull*).

The Court took this matter under advisement on May 6, 2013.


**STANDARDS**

**I.  Motion to Vacate**.

The parties do not dispute Plaintiff bears the burden to
show why the Court should not vacate the arrest of Defendant.
*See* Fed. R. of Civ. P., Supp. Admiralty Rule E(4)(f).

An *in rem* action may be brought under Rule C of the
Supplemental Admiralty Rules "to enforce any maritime lien."
Fed. R. Civ. P., Supp. Admiralty R. C(1)(a).  Rule C(3)(a)(I)
provides the district court may issue a warrant for arrest of the
vessel or other property that is the subject of the action upon

9 - OPINION AND ORDER

the filing of a verified complaint:

> (3) Judicial Authorization and Process.
>> (a) Arrest Warrant.
>>> (I) The court must review the complaint and any supporting papers.  If the conditions for an in rem action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action.

After property is arrested under Rule C, the defendant may contest it under Rule E(4)(f).  *See also* Local Admiralty R. 1017-1.  At a Rule E hearing, the defendant "can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings."  Fed. R. Civ. P., Supp. Admiralty R. E advisory committee's note (1985 amends.).  The plaintiff has the burden "to show why the arrest . . . should not be vacated."  Fed. R. Civ. P., Supp. R. E(4)(f).  *See also* Local Admiralty R. 1017-1.

The plaintiff need not prove its case at the Rule E(4)(f) hearing.  Instead the plaintiff only needs to show "probable cause" for the issuance of the warrant or writ (*i.e.,* that the plaintiff is "reasonably likely to prevail" on the merits of the contested issue).  *See OS Shipping Co. Ltd. v. Global Mar. Trust(s) Private Ltd.,* No. 11 cv 377, 2011 WL 1750449, at *5 (D. Or. May 6, 2011).  This "reasonable grounds/probable cause" requirement "translates roughly to requiring that plaintiff show entitlement to a maritime lien."  *Newport News Shipbuilding and*

10 - OPINION AND ORDER

*Dry Dock Co. v. S.S. Independence,* 872 F. Supp. 262, 265 (E.D. Va. 1994).

## II.  Summary Judgment.

Summary judgment is appropriate when there is not a "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a).

The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

## DEFENDANT'S MOTION TO VACATE ARREST
## AND FOR SUMMARY JUDGMENT

## I.  Issue Before the Court.

Defendant contends Plaintiff has not met its burden to prove that even if Plaintiff had a valid maritime lien against Defendant under United States law, such lien survived when the vessel was arrested in India and subsequently released after the

11 - OPINION AND ORDER

posting of security.

Pursuant to the "probable-cause" standard, the Court does not make findings of fact as to the ultimate merits of Plaintiff's claim against Defendant. Instead the Court, based on the record to date, will only determine whether Plaintiff has satisfied the probable-cause standard by showing that if Plaintiff had a valid maritime lien under United States law, such lien had not been discharged at the time this Court issued the Warrant for Arrest.

The parties do not dispute any of the facts material to Defendant's Motion. The question, therefore, is whether the undisputed facts as applied to the relevant law entitle Defendant to judgment as a matter of law.

## II. Applicable Law.

As noted, Defendant contends in its Motion to Vacate that even if Plaintiff had any claim that entitled it to arrest Defendant, it was a claim for a maritime lien under United States law.[1] Accordingly, Defendant contends United States law applies for purposes of deciding its Motion.

Plaintiff asserts United States law applies to this matter. Plaintiff relies on the choice-of-law provision in Plaintiff's *Terms and Conditions*, which provides the maritime law of the

---

[1] Defendant notes it does not agree Plaintiff ever had a valid maritime lien against Defendant. Defendant only assumes this fact *arguendo* for purposes of its pending Motion.

United States applies.  Specifically, the *Terms and Conditions*
provide:  "This Contract shall be governed by and construed in
accordance with Title 9 of the United States Code and the
Maritime Law of the United States."  Compl., Ex. C at ¶ 16.  To
support its position, Plaintiff cites to *Trans-Tec Asia v. M/V*
*HARMONY CONTAINER,* 518 F.3d 1120 (9th Cir. 2008), in which the
Ninth Circuit concluded:  "Absent a strong showing that it should
be set aside, the parties' choice of law provision, as part of a
freely negotiated private international agreement, unaffected by
fraud, undue influence, or overweening bargaining power . . .
should be given full effect."  *Id.* at 1127-28 (citations and
quotations omitted).

   *Trans-Tec* involves a set of facts similar to those present
here.  The plaintiff in *Trans-Tec* was a fuel supplier who brought
an action under 46 U.S.C. § 31342 against the defendant-vessel
and its owner for unpaid bunker fuels provided by the plaintiff
to the defendant-vessel upon demand of the vessel's charterer.
The plaintiff's standard contract terms included a provision that
United States law applied to the transaction with the charterer.
Unlike here, however, the issue in *Trans-Tec* was whether the
choice-of-law provision was incorporated into the contract
governing the transaction that gave rise to the plaintiff's
claims.  *Id.* at 1123-24.  The Ninth Circuit determined Malaysian
law controlled the issue of contract formation and then concluded

13 - OPINION AND ORDER

the choice-of-law provision was incorporated into the contract pursuant to Malaysian law. *Id.* at 1124-25.

Unlike in *Trans-Tec*, the issue here is if Plaintiff had a valid lien under United States law, whether that lien still existed at the time the Court granted the Warrant for Arrest; *i.e.*, the issue here is not whether a maritime lien ever existed under United States law. The Court, therefore, concludes United States law governs for purposes of Defendant's Motion. Nevertheless, the Court also concludes, as explained below, that India law is relevant to determining the effect of the India proceedings on Plaintiff's alleged maritime lien.

**III. Creation of a Maritime Lien under United States Law.**

Plaintiff asserts it has a maritime lien and an *in rem* claim against Defendant pursuant to Section 31342 of the Federal Maritime Lien Act (FMLA), 46 U.S.C. § 31301, *et seq*. Section 31342 provides:

> (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner–
>
> > (1) has a maritime lien on the vessel;
> > (2) may bring a civil action in rem to enforce the lien; and
> > (3) is not required to allege or prove in the action that credit was given to the vessel.
>
> (b) This section does not apply to a public vessel.

The Ninth Circuit has held "[f]uel bunkers are necessaries within the meaning of § 31342." *Trans-Tec*, 518 F.3d at 1128.

FMLA "imposes no restriction on the nationality or other identity of the supplier or the vessel, and no geographic restriction on the place of provision of the necessaries." *Id.* at 1129. Moreover, charterers and their agents are presumed to have the authority to bind the vessel by the ordering of necessaries. *Id.* at 1127-28 (citations omitted). Thus, if Plaintiff has a valid maritime lien under United States law, it was created because Plaintiff provided fuel bunker to Defendant at the request of Carbofer, Defendant's time-charterer.

**IV. Effect of India Proceedings on United States Maritime Lien.**

As noted, the issue before the Court is even if Plaintiff had a valid maritime lien against Defendant under United States law, was that lien discharged in the India proceedings.

In the United States a valid maritime lien is essential to commence an action *in rem* to enforce such a lien. *The Rock Island Bridge*, 73 U.S. 213, 215 (1867)("The lien and the proceeding *in rem* are, therefore, correlative -- where one exists, the other can be taken, and not otherwise."). Thus, "any action *in rem* pursuant to Supplemental Rule C to enforce a maritime lien on a vessel must be premised on the existence of a valid maritime lien at the time that the action was filed." *Petroleos Mexicanos Refinacion v. M/T KING A*, 554 F.3d 99, 102-103 (3d Cir. 2009)(citations omitted).

Plaintiff contends the proceedings in India were *in personam*

15 - OPINION AND ORDER

(as opposed to *in rem*) against the vessel owner and/or charterer and, therefore, did not have any effect on Plaintiff's *in rem* arrest to perfect its United States maritime lien.  Plaintiff bases its argument on the proposition that India law, unlike United States law, does not recognize a maritime lien based on the provision of necessaries to a vessel.  According to Plaintiff, therefore, the seizure of Defendant in India was an "attachment" in an *in personam* action rather than an "arrest" in an *in rem* action.

Defendant, on the other hand, argues for a "one-arrest" rule and contends the basis upon which the arrest in India occurred does not matter.  According to Defendant, after a vessel is seized, security is posted, and the vessel is released, the vessel may not again be seized based on the same claim.

**A.    *In personam* and *in rem* actions under United States law.**

Under United States law *in personam* and *in rem* actions may arise from the same claim and may be brought separately or in the same action.  Fed. R. Civ. P., Supp. Admiralty R. C(1)(b).  *See also Belcher v. M/V MARATHA MARINER*, 724 F.2d 1161, 1163 (5th Cir. 1984).

An *in rem* action in the United States is an action against the named property itself.  *Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 424 F.3d 852, 858 (9th Cir. 2005).  "[T]he theoretical basis for the maritime lien rests on the legal fiction that the

16 – OPINION AND ORDER

ship itself caused the loss and may be called into court to make good." *Id.* (citations omitted). "Thus, the holder of a maritime lien has 'the right to proceed in rem directly against the vessel' that is the fictional cause of the loss." *Id.* (quoting *Chugach Timber Corp. v. N. Stevedoring & Handling Corp. (In re Chugach Forest Prod., Inc.)*, 23 F.3d 241, 245 (9th Cir. 1994)). As noted, an action *in rem* is initiated by the filing of a verified complaint and arrest of the property. Fed. R. Civ. P., Supp. Admiralty R. C. (2), (3).

An *in personam* action, on the other hand, is based on personal liability, usually of the vessel owner. *See Belcher*, 724 F.2d at 1165. Supplemental Admiralty Rule B provides a mechanism for commencing an *in personam* maritime action in federal court by seizing property of the defendant and authorizing the attachment or garnishment of that property. *See* Fed. R. Civ. P., Supp. Admiralty R. B(1).

In *Belcher* the Fifth Circuit explains the difference between an arrest proceeding and an attachment proceeding:

> Attachment does in many respects resemble arrest. In each proceeding the vessel is seized and it may later be sold to satisfy a judgment. In each, the vessel itself may be released and other security substituted. Nevertheless, not only do the issues in the two actions differ; the basic theory on which each is brought is different. In the *in rem* proceeding the owner bears no personal liability. The vessel is sold solely to satisfy the lien. If the proceeds of the

17 - OPINION AND ORDER

> sale are inadequate, there is no liability on
> the owner's part for the residue.  Indeed the
> admiralty court will not render a personal
> judgment against the owner in excess of the
> amount of the release bond.  Only a personal
> action against the owner can establish such
> liability.  In the attachment action, the
> object of the action is a personal judgment
> for the full sum due.  The vessel is seized
> only to compel the owner's appearance by
> subjecting to the court's control property
> within its territorial jurisdiction.  If the
> proceeds of sale of the vessel do not satisfy
> the judgment, the owner remains liable for
> the balance of the debt.

724 F.2d at 1165 (citations omitted).

**B.    Effect of substitute security.**

When process of arrest or attachment has issued, the seized

property may be released upon posting of a sufficient bond.  Fed.

R. Civ. P., Supp. Admiralty R. E(5)(c)("such process shall be

stayed, or the property released, on the giving of security, to

be approved by the court or clerk, or by stipulation of the

parties, conditioned to answer the judgment of the court

. . . .").

**1.    *In rem* proceedings**

In an *in rem* proceeding to enforce a maritime lien, the

posting of a bond or other security transfers the plaintiff's

maritime lien from the arrested property to the substitute

security.  *Alyeska Pipeline*, 703 F.2d at 384.  *See also So. Or.*

*Prod. Credit Ass'n v. Oil Screw Sweet Pea*, 435 F. Supp. 454, 458

(1977)(citing G. Gilmore & C. Black, *The Law of Admiralty*, § 9-98

18 - OPINION AND ORDER

at 798-800 (2d ed. 1975); *Ventura Packers*, 424 F.2d at 859 ("In effect, Ventura Packers' necessaries lien was transferred from the three fishing vessels to the security posted by the Owners.").  In the absence of fraud or misrepresentation, the release of a vessel upon the posting of security discharges the lien against the vessel.  *Alyeska Pipeline*, 703 F.2d at 384 (citing *U.S. v. Ames,* 99 U.S. 35 (1879), and *Sweet Pea,* 435 F. Supp. at 459)).  The discharge of a lien upon release of a vessel occurs by operation of law.  *Sweet Pea*, 435 F. Supp at 459.

In the case of *Sweet Pea*, Port Welding, a ship repairer, had filed a prior action *in rem* against the vessel and *in personam* against the vessel's owner seeking recovery for repairs that it had performed on the vessel.  *Id.* at 456.  In that action the vessel had been arrested and subsequently released upon a stipulated payment of $5,000 security to the court.  The parties later entered into a stipulated judgment for $25,000 in favor of Port Welding, $4,000 of which was paid out of the security deposited with the court.  *Id.* at 457.  The vessel's secured lender brought a case to foreclose a preferred ship mortgage.  Port Welding intervened on the ground that it had priority in the proceeds from the sale of the vessel.  *Id.* at 457-58.  The court held Port Welding's lien on the vessel was discharged upon its acceptance of the security and release of the vessel in the prior action.  Accordingly, Port Welding was "not

19 - OPINION AND ORDER

entitled to any portion of the proceeds from the sale of the
SWEET PEA because it did not hold a maritime lien on the vessel
at the time it was sold." *Id.* at 460.

### 2.   *In personam* proceedings

The substitute security does not discharge a lien in an
*in personam* proceeding as it does in an *in rem* proceeding because
the basis of an *in personam* action is personal liability rather
than the liability of the arrested property.  *Belcher*, 724 F.2d
at 1165 ("[T]he attachment bond does not substitute for a lien
but only for the owner's personal liability.").

### 3.   Proceedings in foreign jurisdictions

To determine whether Plaintiff's maritime lien was
discharged in the India proceedings, the Court must determine
whether Plaintiff's maritime lien was invoked.  If so,
Plaintiff's maritime lien would have been discharged upon the
posting of substitute security and the release of the vessel.
The subsequent arrest of the vessel in Kalama, therefore, would
have been invalid.  The Court notes the question of the
enforceability of United States maritime liens in foreign courts
"carries difficulties because few other jurisdictions recognize
maritime liens with the same liberality as the United States."
Thomas Schoenbaum, *Admiralty & Mar. Law* § 9-8 (5th ed. 2012)
("[O]utside the U.S. the general rule obtains that a foreign
maritime claim should be enforced as a maritime lien only if

there is a maritime lien under both foreign law and the law of the forum.")(citations omitted)).  Specifically, "the United States is one of a handful of countries that recognizes a maritime lien for the provision of necessaries." *Trans-Tec*, 518 F.3d at 1123 (citing William Tetley, *Maritime Liens and Claims* 551 (2d ed. 1998)).  *See also Trans-Tec*, 518 F.3d at 1123 n.4 (fewer than thirty countries, among them the United States, France, and those nations that signed on to the 1926 Brussels Convention, recognize such a lien; the 1926 Brussels Convention provides a maritime lien for necessaries under limited circumstances)(citing Tetley at 551).[2]

Although it does not appear that the Ninth Circuit has determined the effect a prior action in a foreign jurisdiction has on a maritime lien arising under United States law, other courts have looked to the law of the foreign jurisdiction as a threshold matter to determine whether the plaintiff's maritime lien was invoked in the earlier proceedings.  For example, in *Belcher* the plaintiff fuel supplier filed an *in rem* action against the defendant vessel, had the vessel arrested, and alleged the plaintiff had provided fuel to the vessel but had not been paid for it.  724 F.2d at 1163.  Before bringing an action in the United States, the plaintiff initiated an action in the

---

[2] India is not one of the identified signatories to the 1926 Brussels Convention.  Tetley at 1419-20.

Netherlands in which the vessel was attached to satisfy the alleged outstanding debt. *Id.* In the Dutch action the vessel owner secured the release of the vessel by posting a letter of undertaking as security for the claim. *Id.* The vessel owner asserted the plaintiff's maritime lien was discharged when the owner provided security to release the vessel from attachment. *Id.* at 1165. The court disagreed. The Fifth Circuit held the pending action in the Netherlands was an attachment against the vessel owner and was not the equivalent of an arrest in an *in rem* action against the vessel itself. *Id.* at 1164. The court relied on the fact that Dutch law does not recognize maritime liens and, therefore, does not provide a mechanism by which such a lien can be enforced. *Id.* The plaintiff's maritime claim under United States law, therefore, existed despite the pending Dutch proceeding. *Id.* at 1165. The court found there would not be any hardship imposed on the vessel owner by continuing the United States proceeding because the United States proceeding could be stayed pending resolution of the Dutch proceeding and the same letter of undertaking stood as security in both actions. *Id.* at 1165-66. The court also noted the plaintiff would be deprived of its opportunity to prove its *in rem* claim if the United States case was dismissed and the plaintiff failed to prevail in the Dutch action. *Id.* at 1166.

Similarly in *The Kongsli*, 252 F. 267 (D.C. Me. 1918),

the district court held when French law did not provide a procedure to enforce a lien *in rem* arising out of a maritime collision, a pending action in a French court in Algeria in which the vessel had previously been seized and released upon posting of security did not extinguish the plaintiff's maritime lien arising under United States law.

According to Defendant, however, the holding in *Matter of Topgallant Lines, Inc.,* 154 B.R. 368 (S.D. Ga. 1993), *aff'd without opinion by sub nom. McAllister Towing v. Ambassador*, 20 F.3d 1175 (11th Cir. 1994), controls and the "one-arrest" rule applies regardless whether the prior foreign proceeding was *in rem* or *in personam*.  The Court disagrees.

*Topgallant* was a bankruptcy proceeding in which some of the claimants had previously brought seizure proceedings in Germany.  In the German proceeding the vessel owner posted alternative security, and the vessel was released.  *Id.* at 372. In the bankruptcy proceeding the German claimants argued they were entitled to assert their maritime lien against the vessel's freights because the proceedings were *in personam* actions as Germany does not provide a procedure for bringing *in rem* actions against vessels themselves.  *Id.* at 379-80.  The *Topgallant* court held the German claimants, by accepting bank guarantees, agreed to transfer the liens that they sought to enforce from the vessel to the security represented by the guarantees and that they must

23 - OPINION AND ORDER

look to the bank guarantees for satisfaction of their claims. *Id.* at 380.

Although it is difficult to reconcile the differences between the holdings in *Belcher* and *Topgallant*, the Court is not persuaded *Topgallant* supports the broad "one-arrest" rule as Defendant advocates.  *Topgallant* did not involve nor did it address the issue of a subsequent arrest of the same vessel. Moreover, although the *Topgallant* court acknowledged the holding in *Belcher*, it did not rely on *Belcher* and instead focused on the language of the guarantees in which the issuer agreed to "unconditionally, inevocably and absolutely and without time limit, stand security . . . as surety for all claims for which the seizure was ordered." *Id.* at 380.  In addition, and perhaps more importantly, the German claimants in *Topgallant* were in possession of a security from the foreign proceedings.  Here Plaintiff dismissed the foreign action, albeit voluntarily, and returned the security posted in India to Peristil Maritime. Thus, if the Court dismissed this case, Plaintiff would no longer have any guarantee that would satisfy its claim for the unpaid fuel.

Accordingly, the Court must determine whether the seizure in India was an *in rem* arrest that implicated Plaintiff's maritime lien or an *in personam* attachment as Plaintiff asserts.

24 - OPINION AND ORDER

### 4.  India law

Rule 44.1 of the Federal Rules of Civil Procedure
provides:  When "determining foreign law, the court may consider
any relevant material or source, including testimony, whether or
not submitted by a party or admissible under the Federal Rules of
Evidence."  Rule 44.1 gives the court wide latitude in
determining foreign law.  Schoenbaum § 9-8 at n.26.  "The
existence of a right to a lien under foreign law can be proved in
several different ways, such as through an affidavit by a foreign
legal expert or through an authoritative legal treatise or law
review article."  *Id*.

Here Plaintiff submitted the Declaration (#37) of V. K.
Ramabhadran in Support of Memorandum in Opposition to Defendant's
Motion to Vacate Arrest and for Summary Judgment and a treatise
on maritime law in India to support its position that India law
only recognizes maritime liens in certain instances, and none of
those instances includes a claim for necessaries supplied to a
ship.  Ramabhadran attests India law recognizes both *in rem* and
*in personam* claims in admiralty cases.  Ramabhadran Decl. at
¶¶ 4, 9.  India courts, however, recognize only a limited class
of maritime liens that are restricted to five types of claims,
none of which are relevant to this discussion.  *Id*. at ¶ 6.
Ramabhadran explains:  "Under Indian law, the supply of
necessaries to a ship does not create a maritime lien against the

25 – OPINION AND ORDER

ship.  Specifically, under Indian law a maritime lien is not
created where, as here, a party supplies fuel to a Vessel and the
ordering party fails to pay." *Id.* at ¶ 7.  In addition, "[t]he
Indian *in rem* arrest statute is very broad and can be used to
arrest a vessel in cases where a plaintiff merely has a maritime
*in personam* claim against the shipowner." *Id.* at ¶ 9.

Ramabhadran's testimony is supported by *Maritime
Practice in India*, a treatise on Indian law relied on by
Plaintiff.  Chapter 8 titled "Maritime liens" provides:

> For the claims under subparagraphs . . .
> (b) [Any claim for necessaries supplied to
> any ship] . . . . of Chapter 7 there is no
> maritime lien but only a right in rem . . .
> under Indian rules of conflict of laws, a
> foreign maritime lien may not be recognised
> [*sic*] and enforced as such by the Indian
> courts even though the proper law of the
> claim accords it a maritime lien status, e.g.
> a preferred ship's mortgage, necessaries,
> . . . under United States law.

Shrikant Hathi & Binita Hathi, *Maritime Practice in India,* 7th
ed. (2012).  Decl. of Elizabeth Tedesco Milesnick in Support of
Pl.'s Mem. re Indian Authority, Ex. D.

Applying this understanding of India law, the Court
finds the basis of the seizure in the India proceedings was not
and could not have been an exercise of any maritime lien that
arose under United States law.  As an initial matter, although
Plaintiff made a number of allegations in the Plaint that the
Defendant-vessel was itself liable and a maritime lien would

26 - OPINION AND ORDER

exist under United States law, the seizure of the vessel occurred pursuant to the High Court's April 16, 2012, Oral Order.  The Court, therefore, looks to the High Court's Oral Order to determine the purpose and effect of the seizure.  The use of the word "arrest" in the Oral Order does not support a conclusion that the basis for the arrest was an *in rem* claim based on a maritime lien because the use of an *in rem* arrest in India is used for both *in rem* and *in personam* claims.  The April 16, 2012, Oral Order, however, references Plaintiff's claim for "necessaries," which, as noted, does not give rise to a maritime lien under India law.  Moreover, the India court does not mention United States maritime law nor a maritime lien in its April 16, 2012, Oral Order.  Instead, the High Court references three India cases, all of which involve the use of *in rem* arrests to secure claims in future and pending arbitrations.  None of those cases refers to or appears to relate to maritime liens.[3]

In summary, the Court concludes on this record that the seizure of Defendant in the India proceedings was not an arrest

_____

[3] At the Court's direction, the parties provided supplemental briefing on whether the cases cited in the High Court's April 16, 2012, Oral Order clarified the basis upon which Defendant was arrested in the India proceedings.  In its supplemental briefing, Defendant argued India would not allow a second arrest of the vessel based on international law.  This Court, however, does not find Defendant's argument persuasive because the question before the Court is not whether India law would allow for a second arrest of the vessel, but whether the India proceedings discharged Plaintiff's maritime lien arising under United States law.

to enforce a maritime lien.  The subsequent posting of security and release of Defendant, therefore, did not discharge any maritime lien Plaintiff may have arising under United States law. Accordingly, the Court also concludes Plaintiff has sustained its burden of showing it had "probable cause" to seek arrest of the vessel in this action on the basis that if it had a valid maritime lien under United States law, that lien was not discharged in the India proceedings.

**V.    Additional Arguments by Defendant.**

**A. Validity of Plaintiff's *in personam* claim.**

Defendant contends Plaintiff did not have a valid *in personam* claim in the India proceedings.  This argument, however, is not relevant to this matter.  The effect of India proceedings is the issue before the Court rather than the validity of the claim asserted by Plaintiff in the India proceedings.  In addition, counsel for both parties represented to the Court at oral argument that Defendant has a pending counterclaim in the India proceedings against Plaintiff for wrongful arrest.  Thus, the adjudication of that claim will address any harm that Defendant alleges was caused by the first arrest.

**B. Judicial estoppel.**

Defendant also asserts under its Second Affirmative Defense of "unclean hands" that Plaintiff is judicially estoped from taking a position that is inconsistent with Plaintiff's position

28 - OPINION AND ORDER

in the India proceedings.  In other words, Defendant contends
Plaintiff is estopped from asserting its claim in the India
proceedings was an *in personam* action in light of the fact that
Plaintiff asserted its right to an *in rem* claim and maritime lien
in its Plaint.  Defendant points to references in Plaintiff's
Plaint in which Plaintiff alleges a maritime lien would arise
under United States law.

"Judicial estoppel is an equitable doctrine that precludes a
party from gaining an advantage by asserting one position, and
then later seeking an advantage by taking a clearly inconsistent
position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778,
782 (9th Cir. 2001).  The Ninth Circuit "has restricted the
application of judicial estoppel to cases where the court relied
on, or 'accepted,' the party's previous inconsistent position."
*Hamilton,* 270 F.3d at 783.

As noted, Plaintiff makes numerous statements in its Plaint
regarding its maritime claim, including an assertion that it had
a maritime lien under United States law.  It is not clear,
however, whether Plaintiff was seeking to have the India High
Court enforce that lien.  Plaintiff instead appears to have been
requesting seizure of the vessel as security for a future
arbitration.  As noted, in the April 16, 2012, Oral Order, the
India High Court did not reference United States law or a
maritime lien but only cites to India cases apparently relied on

by Plaintiff.  The High Court also referenced other statements
made by Plaintiff such as Plaintiff's assertion of a claim for
necessaries and the fact that the lawsuit was filed "as well to
secure the claim in Arbitration."  None of these statements,
however, relate to a maritime lien.  Thus, even if the Court were
persuaded Plaintiff took an inconsistent position in the India
proceedings, the issue of judicial estoppel is not applicable
here because the High Court does not appear to have relied on the
alleged inconsistent position.


### PLAINTIFF'S MOTION TO STRIKE OR, IN THE ALTERNATIVE, TO ALLOW ADDITIONAL BRIEFING

The Court acknowledges the May 10, 2013 letter (#48) of
Plaintiff's counsel's requesting the Court to strike Defendant's
Sur-Reply (#44) Memorandum Regarding Indian Authority on the
grounds that it was not responsive to the issue that the Court
requested supplemental briefing on and Defendant raised
additional issues such as how an India court would decide the
Motion before the Court.  In the alternative, Plaintiff requests
the opportunity to respond to the issues raised in Defendant's
Sur-Reply.

As noted, the Court has construed Plaintiff's letter as a
Motion to Strike or, in the Alternative, to Allow Additional
Briefing.  Even though the Court has considered Defendant's
supplemental arguments and even though Defendant's Sur-Reply was

30 - OPINION AND ORDER

not entirely responsive to the Court's direction, the Court finds
Plaintiff has not been prejudiced and the Court need not take
additional briefing on the issues raised.


<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** Defendant's Motion (#33)
to Vacate Arrest and for Summary Judgment and **DENIES** Plaintiff's
Motion (#48) to Strike Defendant's Sur-Reply or, in the
Alternative, to Allow Additional Briefing.

The Court directs counsel to confer and to submit **no later
than July 1, 2013**, a jointly proposed case-management plan and
schedule to resolve all remaining issues in this matter.

IT IS SO ORDERED.

DATED this 12th day of June 2013.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


31 - OPINION AND ORDER